**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MAHMED A.I. ZAGHMOUT,<br>Plaintiff,<br>v.<br>JOSEPH B. EDLOW, *et al.*,<br>Defendants. | Case No. 25 C 2167<br>Hon. LaShonda A. Hunt |

**MEMORANDUM OPINION AND ORDER**

Pursuant to 8 U.S.C. § 1421(c), Plaintiff Mahmed A.I. Zaghmout filed a petition for *de novo* review of the United States Citizenship and Immigration Services' ("USCIS") denial of his application for naturalization. (Pl.'s Pet., Dkt. 1). Before the Court are cross-motions for summary judgment, filed by Plaintiff (Pl.'s Mot. for Summ. J., Dkt. 21), and Defendants Markwayne Mullin, Secretary, United States Department of Homeland Security; Joseph B. Edlow, Director, USCIS; Kevin Riddle, Director, USCIS Chicago Field Office; and Todd Blanche, Attorney General, United States Department of Justice (Defs.' Mot. for Summ. J., Dkt. 30).[1] For the reasons explained below, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted.

**BACKGROUND**

The relevant facts are taken from the parties' respective Local Rule 56.1 statements and the evidence in the record. Plaintiff did not file a response to Defendants' LR 56.1 statement, so the

[1] Plaintiff's petition has typographical errors that make it somewhat unclear who Plaintiff intended to name as defendants. For instance, Plaintiff names "Kristi Hoem" as a defendant and alleges that she is the Director of USCIS (Pl.'s Pet. ¶ 6), but Kristi *Noem* was the Secretary of the U.S. Department of Homeland Security when the petition was filed. From what the Court can glean, Plaintiff intends to sue the Secretary of the U.S. Department of Homeland Security, the Director of USCIS, the Director of the USCIS Chicago Field Office, and the U.S. Attorney General.

facts in Defendants' statement are deemed admitted so long as they have support in the record. *See* N.D. Ill. L.R. 56.1(e); *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion."). The Court will refer to Defendants' statement of facts as "Dkt. 32" and to Defendants' response to Plaintiff's statement of facts as "Dkt. 33." Lastly, Plaintiff's fact statements are misnumbered, so when citing a fact asserted by Plaintiff, the Court will refer to the page that the fact is on, rather than the paragraph number of the fact statement.

## I. First Petition

Plaintiff is a citizen of Jordan and lawful permanent resident of the United States who resides in Tinley Park, Illinois. (Dkt. 32 ¶ 1; Dkt. 33 at 1166).[2] On April 5, 2011, Plaintiff married Melissa Torres, a United States citizen. (Dkt. 32 ¶ 2). On Plaintiff's behalf, Ms. Torres filed both a Form I-130 Petition for Alien Relative and a Form I-485 adjustment application on August 8, 2011. (*Id.* ¶ 3). Among other items attached to that petition and application was a copy of a lease agreement for an apartment at 320 N Larkin Ave. # 6 in Joliet, Illinois. (*Id.* ¶ 4; Admin. R. ("AR") at 723-724).[3] The lease agreement appeared to include the signatures of Plaintiff and Ms. Torres, but Ms. Torres's name was spelled as "Melissa Torros." (AR at 724).

On April 5, 2012, USCIS issued a Notice of Intent to Deny ("NOID") the I-130 petition Mr. Torres filed for Plaintiff. (Dkt. 32 ¶ 5). According to the NOID, USCIS intended to deny the petition because the evidence that Plaintiff and Torres provided was not sufficient to establish that

[2] Unless otherwise noted, page numbers in docket citations refer to the "PageID #" in the CM/ECF header of the document.

[3] Page numbers in administrative record citations refer to the page numbers in the lower-righthand corner of each page.

they had been residing together since the date of their marriage, nor that they had not entered into the marriage for the sole purpose of evading immigration laws. (AR at 788). On July 1, 2012, Plaintiff submitted a response to the NOID, providing additional documentation and the same lease. (Dkt. 32 ¶ 6).

Plaintiff and Melissa Torres divorced on February 1, 2016. (*Id.* ¶ 7). Later that year, on October 13, 2016, USCIS investigators issued a statement of findings on Plaintiff's case. (*Id.* ¶ 8). The "[i]nvestigation results were inconclusive for marriage fraud," but the investigators found fraud "for submitting an apartment lease with a forged signature of Torres, and fraudulent marriage separation date on the Judgment for Dissolution of Marriage." (AR at 914). According to the statement of findings, the Cook County Judgment for Dissolution of Marriage for Plaintiff and Ms. Torres stated that they had lived apart since June 2015. (*Id.* at 918). However, USCIS interviewed a maintenance worker at the apartment building where Plaintiff claimed to live in 2014, 420 Kungs Way, and showed him photographs of Plaintiff and Ms. Torres. (*Id.* at 917-918, 934-935). The maintenance worker did not recognize Ms. Torres, but he recognized Plaintiff and said that Plaintiff had lived in an apartment with three men for about a year. (*Id.* at 934-935). USCIS investigators also found that Plaintiff was the only tenant on the lease for the apartment at 420 Kungs Way. (Dkt. 32 ¶ 9).

USCIS interviewed Ms. Torres, and she testified that (1) she and Plaintiff lived together for less than two years, until January 2014; (2) she never lived at 420 Kungs Way; (3) they only lived together at the 320 N Larkin Ave. apartment; (4) the signature on the lease for the Larkin Ave. apartment was not hers; (5) she started dating her new boyfriend in February 2015; and (6) she wanted to withdraw the petition she filed for Plaintiff. (AR at 937-938). USCIS' statement of

findings indicates that the property manager of 320 N Larkin Ave spoke to USCIS investigators and also stated that Ms. Torres did not sign the lease. (*Id.* at 918).

On January 30, 2017, USCIS issued a notice acknowledging Ms. Torres's withdrawal of the I-130 petition. (Dkt. 32 ¶ 14). That same day, USCIS denied Plaintiff's I-485 application based on Ms. Torres's withdrawal of the supporting I-130 petition. (*Id.* ¶ 15).

## II. <u>Second Petition</u>

On June 17, 2018, Plaintiff married Suaid Aladdin, a United States citizen. (*Id.* ¶ 16). On April 3, 2019, Aladdin filed an I-130 petition on Plaintiff's behalf, along with an I-485 adjustment application. (*Id.* ¶ 17). USCIS approved the petition and adjustment application on October 11, 2019. (*Id.* ¶ 18).

Plaintiff filed a Form N-400, Application for Naturalization, with USCIS on August 9, 2022. (*Id.* ¶ 19). On March 21, 2024, USCIS interviewed Plaintiff under oath in connection with his naturalization application. (*Id.* ¶ 20). During his interview, Plaintiff admitted to submitting the lease for the 320 N Larkin Ave apartment to USCIS. (*Id.* ¶ 21). The immigration officer showed Plaintiff the lease and asked, "Is that Melissa's signature?", and Plaintiff responded, "Yes I think so yes." (AR at 468). Next, the immigration officer asked Plaintiff if Melissa's name was spelled right, and Plaintiff said, "Yes." (*Id.*).

Plaintiff told the immigration officer that Ms. Torres lived with him at two apartments: 320 N Larkin Ave and 420 Kungs Way. (*Id.* at 466). The immigration officer asked Plaintiff if anyone besides Ms. Torres lived with him at 420 Kungs Way. (*Id.*). Plaintiff said, "No." (*Id.*). The immigration officer then asked, "No one else ever lived with you at this address?", and Plaintiff again responded, "No." (*Id.*). Later in the interview, the immigration officer showed Plaintiff the

lease for the Kungs Way apartment, and Plaintiff testified that he signed the lease but Ms. Torres did not. (*Id.* at 469).

Plaintiff also testified that the landlord of 420 Kungs Way made him move because he fell behind on rent. (*Id.*). The immigration officer asked Plaintiff, "You mentioned they took you to court? What Happened?" (*Id.*) Plaintiff responded, "They didn't take me to court, they told me you have to leave." (*Id.*). The immigration officer then showed Plaintiff a Complaint in Forcible Entry and Detainer that the landlord of 420 Kungs Way filed against him. (*Id.*). The immigration officer asked Plaintiff if he recognized it, and Plaintiff said, "That one I told you we don't pay the rent and we did settlement with a lawyer." (*Id.*). The immigration officer later asked Plaintiff again if he lived at 420 Kungs Way with other people, and Plaintiff denied living there with anyone other than Ms. Torres. (*Id.* at 470).

On April 9, 2024, USCIS issued a NOID to Plaintiff regarding his application for naturalization. (Dkt. 32 ¶ 26). The NOID stated that (1) it appeared Plaintiff was not lawfully adjusted for permanent residence due to marrying Ms. Torres for immigration purposes; and (2) Plaintiff also appeared to be ineligible for citizenship for giving false testimony under oath. (AR at 116, 123). Plaintiff responded to the NOID on May 13, 2024, denying USCIS' allegations. (Dkt. 32 ¶ 27).

On June 12, 2024, USCIS denied Plaintiff's naturalization application. (*Id.* ¶ 28). According to USCIS' decision letter, USCIS found Plaintiff ineligible for naturalization because he was not lawfully adjusted a permanent resident and he failed to establish that he was a person of good moral character, as he gave false testimony to obtain an immigration benefit. (AR at 380-381). The decision letter stated that Plaintiff's response to the NOID did not overcome these grounds. (*Id.* at 376).

In July 2024, Plaintiff submitted a Form N-366, Request for Hearing on a Decision in Naturalization Proceedings. (Dkt. 32 ¶ 30). On October 31, 2024, USCIS issued Plaintiff a decision letter reaffirming the denial of his naturalization application. (*Id.* ¶ 31; AR at 165-167).

**III. <u>Petition for *de novo* Review</u>**

Plaintiff initiated this action on February 28, 2025, seeking review of the denial of his naturalization application pursuant to 8 U.S.C. § 1421(c). Plaintiff alleges that USCIS' denial of his application was incorrect factually and a matter of law. (Pl.'s Pet. ¶ 50).

## <u>LEGAL STANDARDS</u>

**I. <u>Summary Judgment</u>**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial," *id.* at 324, and support their position with "more than a scintilla of evidence," *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 709 (7th Cir. 2000).

Summary judgment is the time for a litigant to "put up or shut up" by "show[ing] what evidence it has that would convince a trier of fact to accept its version of events." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 938 (7th Cir. 2021) (internal quotation marks omitted) (quoting *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020)). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

When deciding cross-motions for summary judgment, courts "view[] the facts in the light most favorable to the respective non-moving party." *Ind. Rail Rd. Co. v. Ill. Com. Comm'n*, 576 F. Supp. 3d 571, 572 (N.D. Ill. 2021) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Similarly, all "justifiable" inferences are drawn in favor of the respective non-moving party. *Anderson*, 477 U.S. at 255. Courts must refrain from weighing evidence or making credibility determinations. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). And "[s]peculation cannot create a genuine issue of fact that defeats summary judgment." *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 946 (7th Cir. 2024).

## II. <u>8 U.S.C. § 1421(c)</u>

"A person whose application for naturalization . . . is denied, after a hearing before an immigration officer under [8 U.S.C. § 1447(a)], may seek review of such denial before the United States district court for the district in which such person resides." 8 U.S.C. § 1421(c). The district court's review is *de novo*. *Id.* "It is appropriate for courts to conduct this review on a motion for summary judgment." *Kriegel v. Noem*, No. 24 C 467, 2026 WL 800631, at *4 (N.D. Ill. Mar. 23, 2026) (collecting cases). The applicant must "show his or her eligibility for naturalization, and all 'doubts should be resolved in favor of the United States and against the [applicant].'" *Id.* (quoting *Berenyi v. Dist. Dir., Immigr. & Naturalization Serv.*, 385 U.S. 630, 636-637 (1967)). Additionally, the "applicant must prove his or her eligibility by a preponderance of the evidence." *Id.* (citing *Plewa v. I.N.S.*, 77 F. Supp. 2d 905, 908-909 (N.D. Ill. 1999)). "Courts do not have equitable authority to naturalize applicants who are ineligible for naturalization as a matter of law." *Id.* (citing *I.N.S. v. Pangilinan*, 486 U.S. 875, 885 (1988)).

**DISCUSSION**

To qualify for naturalization, a person must show that he has:

> — resided continuously in the United States for at least five years immediately prior to applying for naturalization "after being lawfully admitted for permanent residence" (plus certain specific residency requirements not pertinent here);
>
> — resided continuously within the United States from the date of the application up to the time of admission to citizenship; and
>
> — during all of these periods "has been and still is a person of good moral character, attached to the principles of the Constitution of the United States, and well disposed to the good order and happiness of the United States."

*Babatunde v. Napolitano*, No. 9 C 2600, 2011 WL 332523, at *6 (N.D. Ill. Jan. 31, 2011) (quoting 8 U.S.C. § 1427(a)(1)-(3)). Defendants argue that Plaintiff cannot meet his burden of proving that he has met the statutory requirements for naturalization because (1) he cannot show that he was lawfully admitted for permanent residence; and (2) he cannot show that he had the requisite good moral character. (Defs.' Mem. at 1152, Dkt. 31). Plaintiff disputes these contentions and argues that the government "has failed to meet their burden of proof in the unsubstantiated allegations against [him]." (Pl.'s Mem. at 1106, Dkt. 21-1). However, as the applicant, *Plaintiff* has the burden of proving that he is eligible for naturalization. *See Berenyi*, 385 U.S. at 636-637.

In any event, "[t]his Court's discussion begins and ends with the requirement of good moral character." *Dryankova v. Blanch*, No. 23 C 7275, 2026 WL 1164510, at *3 (N.D. Ill. Apr. 29, 2026). "Under 8 U.S.C. § 1101(f)(6), a person shall be deemed not to be of good moral character if he 'has given false testimony for the purpose of obtaining' immigration or naturalization benefits." *Kungys v. United States*, 485 U.S. 759, 779 (1988). "'Testimony' is limited to oral statements made under oath." *Id.* at 780. "Statements made by an applicant in a naturalization examination interview are 'testimony' within the meaning of 8 U.S.C. § 1101(f)(6)." *Segid v. USCIS*, No. 20 C 1228, 2021

WL 4895322, at *4 (S.D. Ind. Oct. 20, 2021), *aff'd,* 47 F.4th 545 (7th Cir. 2022) (citing *Bernal v. I.N.S.*, 154 F.3d 1020, 1023 (9th Cir. 1998)). Section 1101(f)(6) "does not distinguish between material and immaterial misrepresentations." *Kungys*, 485 U.S. at 779. So, the statute "denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits." *Id.* at 780.

The undisputed evidence shows that Plaintiff gave false testimony during his naturalization interview. Most obviously, he said "Yes" when asked if Ms. Torres's name was spelled correctly in her purported signature on the lease agreement for 320 N Larkin Ave. #6, where Ms. Torres's name is spelled "Melissa Torros." (AR at 468, 724). Plaintiff also denied being taken to court by the landlord of 420 Kungs Way when he in fact was sued. (*Id.* at 469, 930). And at the end of his interview, Plaintiff responded, "Yes" when asked if his answers to the immigration officer's questions were "true and correct." (*Id.* at 470).

Moreover, Plaintiff falsely testified that Ms. Torres signed the lease for 320 N Larkin Ave. #6. (*Id.* at 468). The fact that Ms. Torres's name is spelled wrong in the signature strongly indicates that it did not come from her hand. Plaintiff points to different documents with Ms. Torres's signature and argues that "her signature varies in style and spelling from document to document." (Pl.'s Mem. at 1112, Dkt. 21-1). But none of the signatures Plaintiff references look anything remotely like the "Melissa Torros" signature on the lease agreement, and contrary to Plaintiff's argument, they are fairly consistent in style. (*See, e.g.*, AR at 84-85, 472, 722, 820, 833, 837, 879). What Plaintiff cannot refute is Ms. Torres's sworn testimony that she did not sign the lease. (*Id.* at 937).

Plaintiff purports to submit an affidavit from Robert Smith, who states that he is the owner of the company that manages 320 N Larkin Ave. and "confirms" that Plaintiff and Ms. Torres signed the lease agreement. (Compl., Ex. 11 (Smith Stmt.) at 96, Dkt. 1-1). However, Mr. Smith's "affidavit" is not sworn, and therefore, it is not an affidavit. *See Brooks v. Cmty. Mem'l Hosp. of Menomonee Falls, Inc.*, No. 17 C 659, 2018 WL 2860019, at *1 (E.D. Wis. June 11, 2018) ("An affidavit must be 'sworn to before someone who is authorized to administer an oath.'" (quoting *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985))). Mr. Smith's statement is notarized, but the notary's acknowledgement only states that Mr. Smith's signature is authentic. (Smith Stmt. at 96). Because there is no indication that Mr. Smith made his statement under penalty of perjury, the Court will not consider it. *See Brooks*, 2018 WL 2860019, at *1 (explaining that courts can reject unsworn documents purporting to be affidavits at summary judgment). In his own affidavit, Plaintiff asserts that Ms. Torres signed the lease. (Compl., Ex. 10 (Pl.'s Aff.) at 83-84), Dkt. 1-1). But this does not help Plaintiff either because "self-serving statements in affidavits without factual support in the record carry no weight on summary judgment." *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004) (citing *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004)). Plaintiff's claim that Ms. Torres signed the lease has no support in the record. In fact, that is the exact opposite of what Ms. Torres stated under oath. As a result, it does not create a genuine dispute as to whether she signed the lease.

In addition, Plaintiff falsely testified that Ms. Torres and no one else lived with him at 420 Kungs Way. (AR at 466). Plaintiff claims in his affidavit that his testimony was true, (*see* Pl.'s Aff. at 83-84), but again, his self-serving statements lack support in the record. Ms. Torres testified that she never lived there. (AR at 937). Not only did a maintenance worker at 420 Kungs Way say he did not recognize Ms. Torres, but he also testified that Plaintiff lived there with three other men.

(*Id.* at 934-935). Consequently, there is no genuine dispute that Plaintiff's testimony about Ms. Torres living with him at 420 Kungs Way was false.

Having determined that Plaintiff gave false testimony, the final question is whether Plaintiff did so for the purpose of obtaining an immigration benefit. *See* 8 U.S.C. § 1101(f)(6). This inquiry is fairly straightforward, as "[e]vidence that an individual knowingly made false statements during a naturalization interview demonstrates that they did so with the intent to obtain an immigration benefit." *United States v. Faris*, No. 17 C 295, 2020 WL 532890, at *5 (S.D. Ill. Feb. 3, 2020) (citing *Bijan v. USCIS*, 900 F.3d 942, 946 (7th Cir. 2018)); *see Balde v. Bondi*, No. 24 C 1853, 2026 WL 2631305, at *3 (S.D. Ind. July 8, 2026) ("Balde's false statements were made to an immigration official during an interview for naturalization, therefore, they were made with the subjective intent to obtain naturalization benefits."). However, the Supreme Court has noted that "[w]illful misrepresentations made for other reasons, such as embarrassment, fear, or a desire for privacy" are not "sufficiently culpable to brand the applicant as someone who lacks good moral character." *Kungys*, 485 U.S. at 780.

Here, the Court finds that Plaintiff gave false testimony with the subjective intent to obtain an immigration benefit because he offered the false testimony to an immigration official during his naturalization interview. *See Faris*, 2020 WL 532890, at *5. Plaintiff argues that his false testimony reflected "[a]t most, possible misunderstandings or imperfect recollection." (Pl.'s Resp. at 1173, Dkt. 34). But it is hard to imagine that Plaintiff could forget living with three men instead of one woman in an apartment, or the spelling of his ex-wife's last name. Plus, Plaintiff has not identified which questions he suggests he misunderstood. The immigration officer asked Plaintiff at the end of his interview if he understood all of the questions, and Plaintiff responded unequivocally, "Yes." (AR at 470). Although Section 1101 does not have a materiality requirement,

*Kungys*, 485 U.S. at 779-780, the Court finds it significant that most of Plaintiff's false statements bear on the legitimacy of his marriage to Ms. Torres.

Plaintiff also argues that Section 1101(f)(6) requires intent to deceive and that whether he intended to deceive USCIS is a question of fact that cannot be resolved at summary judgment. (Pl.'s Resp. at 1173) (citing *United States v. Hovsepian*, 422 F.3d 883, 887 (9th Cir. 2005)). "However, the subjective intent required to establish false testimony is the intent to obtain an immigration benefit; the statute does not require the intent to deceive." *Segid*, 2021 WL 4895322, at *4 (citing *Kungys*, 485 U.S. at 780; *Bijan*, 900 F.3d at 946).

In sum, based on a *de novo* review of the record, Plaintiff has failed to prove that he is a "person of good moral character," and therefore, that he is eligible for naturalization. *See* 8 U.S.C. § 1427(a)(3).

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted.

**DATED**: September 30, 2026

**ENTERED**:

LaShonda A Hunt

LASHONDA A. HUNT
United States District Judge